**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS A. SIMONIAN, | |
| Relator, | Civil Action No. 1:10-cv-01258 |
| v. | Honorable Robert W. Gettleman |
| BP LUBRICANTS USA INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## RELATOR'S RESPONSE IN OPPOSITION TO BP'S MOTION TO DISMISS

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America ("Relator"), respectfully submits this Response in Opposition to the Motion to Dismiss filed by Defendant BP Lubricants USA Inc. ("BP").

## I.  INTRODUCTION

Attempting to obtain (or retain) an advantage in a competitive industry following the expiration of its U.S. Design Patent No. D314,509 ("the '509 Patent"), BP has continued to mark its product packaging for CASTROL® GTX® Motor Oil with the expired design patent. In doing so, BP intended to deceive the public into believing that the design of the so marked packaging continues to be "unique" to the Defendant 19 years after issuance of the design patent. But, because the '509 Patent expired five years ago BP is: a) not entitled to the "halo effect" of patent marking, i.e., BP is not entitled to the positive good will associated with telling the world that a company's product (or packaging design) is so novel and unique that the United States government has awarded it a (design) patent; and b) BP is subject to a statutory fine pursuant to 35 U.S.C. § 292 of up to $500 per false marking.  BP assessed the risk of its false marking, determined that the risk warrants the "rewards," and decided to leave the expired patent on its product packaging and take its chances that it either would not get caught or the fine would not

1

be substantial enough to affect its bottom-line. BP's gamble backfired; it has been caught, and it should be fined sufficiently to dissuade future attempts to mislead the public. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2010 U.S. Dist. LEXIS 36127 at \*136 (S.D. Cal. Apr. 13, 2010) [1] ("In determining the amount of the fine, the Court must strike an appropriate balance between enforcing the public policy embodied in the statute and not imposing a disproportionately large fine for relatively small violations."); *The Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1304 (Fed. Cir. 2009)(on remand).

Accordingly, BP does not and cannot deny that it has, as set forth in Relator's Complaint (**Exhibit A** hereto), mis-marked certain of its CASTROL® motor oil bottles with U.S. Patent No. D314,509 ("the '509 Patent"), which expired some five years ago. BP nonetheless argues that the Complaint should be dismissed because: (i) the Relator supposedly cannot allege a cognizable injury to support standing; and (ii) the Relator has not pled BP's deceitful intent with the particularity and plausibility required by Rules 9(b) and 8(a), respectively.

As set forth below, BP's motion should be denied. First, Congress granted the Relator standing to file this lawsuit *on behalf of the United States*, the United States has suffered an injury from BP's false marking and the Relator has sufficiently pled its standing here. The standing of non-competing relators like Mr. Simonian was recently reaffirmed by the Federal Circuit's decision in *Pequinot v. Solo Cup*, where the court, which has an obligation "in the first instance" to determine whether it has subject matter jurisdiction[2], did not dismiss the plaintiff's complaint for lack of standing but instead addressed the merits of the case. *Pequinot v. Solo Cup Company*, 2010 U.S. App. LEXIS 11820 at \*10-23 (Fed. Cir. 2010) (hereinafter "*Solo Cup*"). Second, the Relator has pled his Complaint with the requisite particularity and plausibility, even

---

[1] This and all other unpublished decisions are attached hereto as **Group Exhibit 1** in order of appearance.
[2] *See International Electronic Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007).

assuming, *arguendo*, that Rule 9(b) applies. The Relator has sufficiently alleged "the who, what, when, where, and how: the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls-Royce Corporation*, 570 F.3d 849, 853 (7th Cir. 2009). In doing so, the Relator has alleged facts that demonstrate that BP falsely represented the status of the intellectual property marked on the bottles of its CASTROL® GTX® motor oil products and that it did so for purposes of deceiving the public. In this latter regard, because BP marked its products with a patent that was expired at the time of marking and was aware that the patent was expired, a "rebuttable presumption" arises that BP falsely marked its product for the purpose of deceiving the public. *Solo Cup*, 2010 U.S. App. LEXIS 11820 at *15-16. The Relator has thus "plausibly" alleged both elements of a false marking claim.

## II. ARGUMENT: BP's Motion to Dismiss Should Be Denied.

### A.     Background.

A patent is a contract between the public and an inventor. *Grant v. Raymond*, 31 U.S. 218, 242 (1832). This contract gives monopoly-like rights to the inventor for a limited time. *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("By the patent laws, Congress has given to the inventor the opportunity to secure the material rewards for his invention for a limited time, on condition that ... upon the expiration of the patent the public be left free to use the invention"). When those bargained-for patent rights expire, the former patentee has an obligation not to mark a product with that patent, because doing so provides the public with false information concerning the "status of intellectual property embodied in an article of manufacture or design." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1356 (Fed. Cir. 2005). Put another way, Congress intended that the public be spared the search costs of determining the status of such intellectual property. *Id.*

Congress enacted 35 U.S.C. § 292 with the purpose of preventing persons (and companies like BP) from telling the world that a product is covered by a particular patent when it is not, in order to protect consumers, competition, and the integrity of the patent system. *The Forest Group, Inc.*, 590 F.3d 1295, 1303-4. To discourage false marking, Congress provides for a fine of up to "$500 per offense" and offers citizens a reward for collecting that fine on the government's behalf.

As the Federal Circuit explained in *Solo Cup*, marking with an expired patent can form the basis for a false marking claim because, "as with a never-patented article, an article marked with an expired patent number imposes on the public 'the cost of determining whether the involved patents are valid and enforceable." 2010 U.S. App. LEXIS 11820 at *14 (citing *Clontech Labs*, 405 F.3d at 1357 n. 6). Presumably in light of *Solo Cup*, BP has not challenged the fact that products marked with expired patents are "unpatented" under § 292.

With regard to the question of fact whether false marking rises to the "level of statutory deception," the Federal Circuit articulated the test as follows: "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech Labs*, 406 F.3d at 1352. Put another way, "'the *fact* of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent.'" *Id.* (emphasis added; citation omitted). Or, as the Supreme Court recently phrased it:

> We recognize that certain statements are such that, to show them false, is normally to show scienter as well. It is unlikely, for example, that someone would falsely say 'I am not married' without being aware of the fact that his statement is false.

4

*Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784, 1796-97 (April 27, 2010). Indeed, in false

marking cases, a "rebuttable presumption" arises that a company that misrepresents the status of

its patents with the knowledge that the representation is false, does so with the intent to deceive

the public. *Solo Cup*, 2010 U.S. App. LEXIS 11820 at *15-16. This rebuttable presumption

then places the burden of proof on the defendant "to show by a preponderance of the evidence

that it did not have the requisite purpose to deceive." In *Solo Cup*, the Federal Circuit then

affirmed the district court's summary judgment ruling that, based on the facts adduced during

discovery in that case, the defendant had rebutted the presumption. *Id*. at *17.

> ### B.     Applicable Legal Standards.

This Court recently set out the standard for a Rule 12(b)(6) motion to dismiss as follows:

> The purpose of a motion to dismiss is to test the sufficiency of the complaint, not
> to rule on its merits. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.
> 1990). In analyzing the motion, the court must accept the well-pleaded
> allegations as true, and view those allegations in the light most favorable to
> plaintiff. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758 (7th Cir.
> 2006). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, ... a plaintiff's obligation to provide the
> 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions,
> and a formulaic recitation of the elements of the cause of action will not do ... .
> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167
> L.Ed. 2d 929 (2007). Factual allegations must be enough to raise a right to relief
> above the speculative level. *Id*. at 1965. (internal quotations omitted).

*Baig v. Coca-Cola Co.*, 2009 U.S. Dist. LEXIS 44184, *6-7 (N.D. Ill. May 27, 2009).

"In ruling on a motion to dismiss for lack of standing, the material allegations of the

complaint must be accepted as true, and the complaint is to be liberally construed in favor of the

plaintiff." *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc.*, 2009 U.S. Dist. LEXIS

73871, *15 (N.D. Ill. Aug. 20, 2009) "The complaint should not be dismissed unless it appears

that the plaintiff could prove no set of facts in support of his claim that would entitle him to

relief." *Id*.

C.      **The Relator Has Standing to Bring Suit on Behalf of the Government.**

BP argues that the Relator fails to allege an injury in fact, claiming that Relator "has pled speculative and insufficient allegations that fail to support standing." BP Mem. at p.9. However, the *Clontech Labs* court made clear that false marking harms the public interest because, inter alia, it forces the public to expend resources it should not have to. The court stated that:

> False marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Clontech Labs*, 406 F.3d at 1356-57.

Moreover, BP simply ignores the fact that, as a *qui tam* Relator, Mr. Simonian takes a partial assignment of the United States' claim. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). As such, the Relator has standing based on the United States' injury. *Id.* ("adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *The Forest Group*, 590 F.3d at 1303-4 ("...the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Patent Compliance Group, Inc. v. Interdesign, Inc.,* 3:10-cv-0404-P, pp. 10-11. (N.D. Tx. June 28, 2010)("…these pleadings are sufficient under both *Pequignot* and *Juniper Networks* because Plaintiff brings suit on behalf of the government and alleges public injuries recognized under case law as the result of falsely marked patents. As such, the Court finds the pleadings satisfy Article III standing under the false marking statute" and "[T]o the extent Defendant contends that Plaintiff may not exercise the government's duty to ensure the laws are faithfully obeyed, this is directly contrary to the policy

6

behind qui tam actions.")(**Exhibit B** hereto); *Juniper Networks v. Shipley*, 2010 U.S. Dist. LEXIS 24889 at *16 (N.D. Cal. Mar. 17, 2010) ("in *qui tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient").

There are two questions then. The first question is whether the United States has standing to pursue a claim against a company that abuses the patent rights the United States granted to it – as part of the contract between the public and the inventor – and injures the public by providing misleading commercial information. The answer to that question is <u>yes</u>. *The Forest Group*, 590 F.3d at 1303 (explaining that the public is injured when it must expend search costs to determine the status of intellectual property); *Clontech Labs*, 406 F.3d at 1356-7 (same).

BP claims the Relator lacks standing because he has not pled a tangible injury to the public. BP is wrong. As the court in *Patent Compliance Group* noted in denying defendant's motion to dismiss based on lack of standing, the "injury suffered under the false marking statute is not always tangible and readily identifiable." *See* **Exhibit B** at 9. As alleged in Relator's Complaint (**Exhibit A** at ¶¶ 28-32), BP has mislead the public in precisely the way the Federal Circuit said it should not: it has provided false information about its intellectual property. *See The Forest Group*, 590 F.3d at 1303.

The second question is whether there is any jurisdictional problem caused by the Relator's pursuit of the United States' claims based on this injury to the public. The answer to that question is <u>no</u>. If it were otherwise, the Federal Circuit would not have addressed the merits in *Solo Cup*, but would have dismissed.[3] *Solo Cup*, 2010 U.S. App. LEXIS 11820 at *10-23;

---

[3] The Federal Circuit has an independent obligation "in the first instance" to determine whether it has subject matter jurisdiction. *See Hughes Aircraft Co.*, 476 F.3d at 1330. In *Solo Cup,* where the plaintiff was a non-competitor like Mr. Simonian, the Federal Circuit ruled on the merits. 2010 U.S. App. LEXIS 11820 at *10-23. Thus, unless one believes the Federal Circuit simply "missed" the subject matter jurisdiction issue, despite its obligation to assess it (even *sua sponte*), the Federal Circuit is comfortable with the standing of relators like Mr. Pequignot and Mr. Simonian. Indeed, given that the trial court in *Solo Cup* specifically addressed the standing issue (640 F.Supp.2d

*Simonian v. Merck*, 1:10-cv-01297 (N.D.Ill. June 1, 2010) ("it must be remembered that if the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue *sua sponte*.") Mem. Op. at p. 4, **Exhibit C** hereto.

As the Federal Circuit has made clear, members of the public are **encouraged** to bring false marking suits. *The Forest Group*, 590 F.3d at 1303-4 ("By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Solo Cup*, 2010 U.S. App. LEXIS 11820 at *13-15 (reaffirms *Clontech Labs* and *The Forest Group*); *Simonian v. Merck* (reaffirming *Zojo Solutions Inc. v. The Stanley Works*, 2010 U.S. Dist. LEXIS 46407 at *4-5 (N.D. Ill. May 12, 2010, "*Forest Group* has confronted – and [has] rejected – the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action.") **Exhibit C** at p. 4. Moreover, the Court in *Patent Compliance Group* held that "particularly with regard to the public and social injuries espoused in *Forest Group*, recognizing harm without a readily apparent injury is not a unique concept (i.e., victimless crimes)." **Exhibit B** at p. 10, *see also Simonian v. Cisco Systems*, 1:10-cv-1306, p. 5 (N.D. Ill. June 17, 2010)("The United States is injured when the laws it enacts to protect the public are violated … Since the United States suffers an injury when the false marking statute is violated, Simonian has standing to assert a claim against Cisco under 35 U.S.C. 292"), attached hereto as **Exhibit D**).

BP attempts to subvert this argument by citing extensively to *Stauffer*. BP Mem. at p. 9. However, *Stauffer* cannot surmount this law or logic. First, *Stauffer* predated *Solo Cup* and *The Forest Group*, which clearly reaffirm the public injury that Congress was seeking to redress with

714, 720-1) and given that the Federal Circuit is aware of the pending *Stauffer* case, it is impossible to believe that the Federal Circuit "missed" the issue.

§ 292 suits. Considering the strong position it took in *The Forest Group* supporting a "cottage industry" of false-marking bounty hunters, and having had the opportunity to address any subject matter jurisdiction problems, it is difficult to imagine that the Federal Circuit would abort *The Forest Group* and find that *qui tam* relators have no standing.[4] *See Simonian v. Merck,* **Exhibit C** at p. 3. Second, even if *Stauffer* can be read as making a broad statement about Constitutional standing law, that broad reading is simply incorrect, as the United States itself has argued to the Federal Circuit. *See U.S. Brief,* **Exhibit E** hereto. As the United States summarized, "the district court imposed an injury requirement on Stauffer as a *qui tam* plaintiff that finds no basis in many years of actual practice, cannot be squared with the Supreme Court's reasoning in upholding Article III *qui tam* standing under the False Claims Act in *Vermont Agency*, and would undermine the premise for standing by actions in court by the United States itself under numerous parts of the U.S. Code." **Exhibit E** at 12.

In sum, as *qui tam* relator and assignee of the United States' claims for this purpose, Mr. Simonian has standing to pursue the injury BP caused the public by falsely marking its products in violation of § 292, in breach of its patent contract with the public.

**D.    The Relator Has Pled a Plausible False Marking Claim.**

Under the case law, the Relator must plead – and prove by a preponderance of the evidence – (a) that BP's product is falsely marked, and (b) that BP lacked a reasonable belief that its product was properly marked. *Clontech Labs*, 406 F.3d at 1352-3. Once the Relator has pled that false marking occurred and that the defendant was aware that the false marking occurred, a

---

[4] Given that *Stauffer* was decided before the Federal Circuit's rulings in *Solo Cup* and *The Forest Group*, there is little reason for this Court to view *Stauffer* as persuasive on the jurisdictional issue now. Of course, the Relator does not agree that *Stauffer* was persuasive. *See*, *Harrington v. Ciba Vision Corporation*, 08 C 251, Tr. at 5-6, 116- 122 (W.D.N.C. May 22, 2009) (finding standing for the § 292 relator after considering – and rejecting – the *Stauffer* opinion, even before *The Forest Group* ruling) **Exhibit F** hereto.

"rebuttable presumption" exists that the defendant falsely marked its product (with a patent that

does not cover the product) for the purpose of deceiving the public. *Solo Cup*, 2010 U.S. App.

LEXIS 11820 at *15. Because the presumption is "rebuttable," the defendant may then submit

evidence (at trial or, as in *Solo Cup*, on summary judgment) in order to satisfy its burden of proof

"to show by a preponderance of the evidence that it did not have the requisite purpose to

deceive." *Id.*; *Pequignot v. Solo Cup*, 646 F. Supp. 2d 790, 797 (E.D. Va. 2009) ("'Whether

evidence exists to rebut the presumption 'turns on a fact-specific examination of the defendant's

conduct'"), quoting *Pequignot v. Solo Cup*, 540 F. Supp. 2d 649, 654 (E.D. Va. 2009) (denying

motion to dismiss complaint similar to Simonian's).[5]

"The question of whether conduct rises to the level of statutory deception is a question of

fact." *Clontech Labs*, 406 F.3d at 1353. BP contends that this fact issue can properly be the

subject of a motion to dismiss at the pleading stage because Relator's allegations "are made […]

with no specific underlying factual support beyond the bare allegation that certain products were

marked with an expired patent number" BP Mem. at p. 6. But having alleged that BP falsely

marked its products with a patent that it knew expired five years ago, the Relator has alleged a

"plausible" claim for false marking:

> At the pleadings stage – viewing all facts in the light most favorable to the
> plaintiff – allegations that a defendant knowingly mismarked an article with an
> expired patent (*i.e.* a false statement with knowledge) allows a court to infer intent
> to deceive the public. [Citing the Federal Circuit's *Solo Cup* opinion].

*Patent Compliance Group, Inc.*, **Exhibit B** at 18.

Put another way, because BP is "presumed to know the law," it is plausible for the

Relator (and this Court) to infer that BP knew that the patent was expired, that such conduct was

prohibited by law, and that BP intended to violate the law and deceive the public. *Solo Cup*,

---

[5] Attached hereto as **Exhibit G** is a copy of the complaint at issue in the March 24, 2009 ruling, denying
Solo Cup's motion to dismiss.

2010 U.S. App. LEXIS 11820 at *19 ("under *Clontech*, a false marking with knowledge of falsity creates a rebuttable *presumption* of intent to deceive. ... Whether evidence suffices to rebut the presumption turns on a fact-specific examination of the defendant's conduct"); *Novo Nordisk Pharmaceuticals*, *Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1361-2 (Fed. Cir. 2001) ("because knowledge of the law is chargeable to the inventor," and "inventors represented by counsel are presumed to know the law," the district court's "inference of deceptive intent is not clearly erroneous ... the district court correctly concluded that Novo knew or should have known that the PTO and the Board would have considered the information ... important"). Moreover, in order to allege a plausible claim, the Relator is not obligated to allege the absence of all possible innocent explanations for defendant's conduct. *Lusby*, 570 F.3d at 854 (the pleader need <u>not</u> "exclude all possibility of honesty in order to give the particulars of fraud"). In *Lusby*, the Seventh Circuit pondered all sorts of possibilities that might prevent the relator from proving the False Claim Act claim, but as a pleading matter, the law is clear: "[no] complaint needs to rule out all possible defenses." *Id.* at 855.

BP admits that it marks the product package of the accused product with the expired patent. BP Mem. at 8. However, BP relegates to a footnote an argument that Relator's Complaint should be construed against it to avoid liablility. In this regard, BP argues that because the Complaint alleges that BP "knows or should know" that the patent expired, this Court should select the "should know" option and dismiss the complaint. *Id.*. That is wrong. As the Seventh Circuit in Lusby correctly stated: "much knowledge is inferential." *Lusby*, 570 F.3d at 854. Courts construe the complaint in favor of the plaintiff on a motion to dismiss, and Relator's allegation as to BP's knowledge (which, of course, is inferential), must be construed accordingly. Thus, the complaint alleges that BP (by itself or its representatives) knows that: (a)

11

it marked the accused product with the '509 Patent, (b) the '509 Patent marked on the accused product expired five years ago, and (c) the accused products are not covered by the expired '509 Patent.

Furthermore, Relator alleges that BP is a sophisticated company, an allegation further supported by BP's own statement that BP "began marking its products with the '509 Patent to avail itself of the benefit of 35 U.S.C. § 287." BP Mem. at 8. Clearly, if BP is sophisticated enough to appreciated the benefits of § 287 (a patentee must provide notice to the public that the product sold is patented in order to recover pre-suit damages in any patent infringement suit), it must also appreciate the consequences imposed by § 292.[6]

Accordingly, having alleged that BP is a sophisticated company, that BP was aware that its '509 Patent had expired, and that subsequent to that expiration BP marked (or continued to mark) the '509 Patent on the accused product, the Relator has alleged a plausible claim for false marking based on the rebuttable presumption that BP falsely marked for the purpose of deceiving the public. (**Exhibit A**, ¶¶ 2, 11-12, 15-16, 19, and 21-25); *Solo Cup*, 2010 U.S. App. LEXIS 11820 at *15; *Solo Cup*, 646 F. Supp. 2d at 797; *Patent Compliance Group*, **Exhibit B** at 17-18.

E.    **The Relator Has Pled a False Marking Claim with the Particularity Required by Rule 9(b).**

Pursuant to Rule 9(b), the plaintiff must allege "the who, what, when, where, and how [of the misrepresentation]: the first paragraph of any newspaper story." *Lusby*, 570 F.3d at 853. BP concedes that the Federal Circuit has never required a false marking claim to be pled in accordance with Rule 9(b). Yet, BP argues that Rule 9(b) should apply because both false

---

[6] BP's explanation that it began marking its products with the '509 Patent while it was still in effect "to satisfy Section 287, and, quite simply, inadvertently failed to remove it upon expiration" (BP Mem. at p.8) sounds like an excuse advanced by drivers caught running a stop sign: "Officer, I started going 35 mph when I saw the posted speed limit, but quite simply, I inadvertently failed to slow down and stop at the stop sign." In any case, Relator respectfully submits that BP's argument should properly be raised in a Motion for Summary Judgment but not in a Motion to Dismiss.

marking cases and inequitable conduct cases require an "intent to deceive," and the Federal

Circuit has held that inequitable conduct cases must be pled in accordance with Rule 9(b). (BP

Mem. at 4, citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009)).

In *Solo Cup*, however, the Federal Circuit <u>specifically</u> distinguished between the burden of proof

in false marking cases (preponderance of the evidence) and the burden of proof in inequitable

conduct cases (clear and convincing evidence), and there is thus no suggestion that the two types

of cases should be treated identically for pleading purposes. 2010 U.S. App. LEXIS 11820, *18.

However, as shown below, because the Relator's pleadings satisfy Rule 9(b) in any event,

we need not engage in an extensive discussion of the *Solo Cup* decision's effect on this issue.

This is the same approach taken by Judge Solis in *Patent Compliance Group*:

> The Court declines to make findings on the application of Rule 9(b). Even if the
> Rule 9(b) heightened standards apply in the instant case, the complaint – viewing
> the pleadings in the light most favorable to the Plaintiff – is sufficient to draw an
> inference of intent to deceive the public and establish a prima facie case under the
> false marking statute.

**Exhibit B**; Order at 17, fn. 7.

### 1. "Intent" need NOT be alleged with particularity.

BP asserts that the Relator has failed to meet its pleading requirements because he has

alleged general, "conclusory" allegations concerning BP's deceptive intent. BP is wrong, as

Rule 9(b) itself makes clear. While a plaintiff must "state with particularity" the "circumstances

constituting fraud," there are certain things that "may be alleged generally:" "[m]alice, intent,

knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). Because things such

as knowledge and intent are "uniquely within another party's control," they may be pled on

information and belief. *Exergen*, 575 F.3d at 1330, *see also Simonian v. Cisco Systems, Inc.*,

1:10-cv-01306 (N.D.Ill., July 29, 2010) Mem. Op. at p. 2, **Exhibit D** hereto. Accordingly, the

Relator's allegations, on information and belief, that BP acted with intent to deceive the public when it marked its products with an expired patent is sufficient pursuant to the explicit terms of Rule 9(b).

> **2.** **The Relator has alleged the requisite "who, what, when, where, and how" of Rule 9(b) and has pled the required elements of a false marking claim.**

Under the case law, the Relator must plead – and prove by a preponderance of the evidence – (a) that BP's product was falsely marked, and (b) that BP lacked a reasonable belief that its product was properly marked. *Clontech Labs*, 406 F.3d at 1352-3. If Rule 9(b) applies, the Relator must allege with particularity the "circumstances constituting fraud." Contrary to BP's contention, the reference to "circumstances" does not require Relator to plead "intent" with particularity; rather "the cases and commentary agree that the reference to 'circumstances' in the rule requires 'the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content, of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Thus, **with regard to the misrepresentation** (here, the false marking), the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *Lusby*, 570 F.3d at 853. The Relator has met all of the foregoing requirements.

In *Lusby*, Judge Easterbrook stated the question nicely: has the *qui tam* defendant been "told exactly what the fraud entails"? Of course, the answer here is yes. Relator has told BP: who committed the false marking, (that is BP,[7] as alleged throughout the Complaint); what

---

[7] Contrary to BP's contention, the identity of the particular individuals at BP involved in the false marking must not be identified in the pleadings but will be learned during the discovery process. *United States ex re. Kennedy v. Aventis Pharmaceuticals*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007) ("It is well established [that] the requirements of Rule 9(b) are relaxed when the plaintiff lacks access to all facts

products it falsely marked (CASTROL® GTX® Motor Oil, as alleged in the Complaint, **Exhibit A** at ¶¶ 15-16), and <u>what</u> patent in particular was falsely marked on the product or associated product packaging (the '509 Patent, *see* **Exhibit A** at ¶¶ 2, 11,  15, and 16); <u>when</u> the false marking event(s) occurred, that is *after* the expiration of the '509 Patent (*see* **Exhibit A** at ¶¶ 2, 11 and 14); <u>where</u> the false marking occurred, that is on the product packaging of the accused product (*see* **Exhibit A** at ¶¶ 15, 16 and 24); and <u>how</u> the false marking was carried out, namely by placing the expired patent number on the product packaging of the accused products (*see* **Exhibit A** at ¶¶ 15, 16 and 24).  *See Lusby*, 570 F.3d at 853-4 (reciting the relator's allegations and noting that: (i) a relator cannot be expected to know – and therefore allege – all the specifics in a given circumstance, and (ii) "much knowledge is inferential."); *see also Simonian v. Cisco Systems, Inc.*, 1:10-cv-01306 (N.D.Ill., July 29, 2010) Mem. Op. at p. 3, **Exhibit D** (Holding that Relator's "allegations plausibly suggest that Cisco had knowledge that the patents at issue were expired, and thus satisfy the notice pleading requirement.").

Having answered the five newspaper questions, and having pled both false marking and knowledge that the patent has expired – thus entitling this Court to infer an intent to deceive per the Federal Circuit's *Solo Cup* and *Clontech Labs* case law, the Relator has pled his complaint with particularity even if Rule 9(b) were to be applied.  Accordingly, BP's motion to dismiss should be denied.

### III.  Conclusion

For the foregoing reasons, Relator respectfully submits that BP's Motion to Dismiss the Relator's complaint should be denied.

---

necessary to detail his claim.  Such a situation is more likely to arise when, as in this case, the relators' claims are based on fraud allegedly committed against third parties").

Dated: July 30, 2010                    Respectfully submitted,

                                        THOMAS A. SIMONIAN, as Relator

                                          s/ Martin Goering
                                        _____

                                        Martin Goering

*Attorneys for Relator*

Joseph M. Vanek                         Martin Goering
John Paul Bjork                         Jessica E. Rissman
VANEK, VICKERS & MASINI, P.C.           EUGENE M. CUMMINGS, P.C.
111 S. Wacker Drive, Suite 4050         One North Wacker Drive, Suite 4130
Chicago, Illinois 60606                 Chicago, Illinois  60606

Bruce S. Sperling
Robert D. Cheifetz
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 30, 2010, a true and correct copy

of **RELATOR'S RESPONSE IN OPPOSITION TO BP'S MOTION TO DISMISS** was filed

electronically with the Clerk of the Court and was served via the Court's CM/ECF System which

will automatically provide electronic notice upon all counsel of record.


s/  Martin Goering

Martin Goering
*Attorney for Relator*