**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS A. SIMONIAN, | |
| Plaintiff, | Civil Action No. 1:10-cv-01258 |
| v. | **Honorable Gary Feinerman** |
| BP LUBRICANTS USA INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**SIMONIAN'S RESPONSE IN OPPOSITION TO
BP'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America ("Simonian"), respectfully submits this Response in Opposition to the Motion to Dismiss Simonian's Amended Complaint filed by Defendant BP Lubricants USA Inc. ("Defendant" or "BP") on June 6, 2011 ("Motion") (Dkt. No. 54).

## I. INTRODUCTION

"In passing the statute prohibiting deceptive patent mismarking, Congress determined that such conduct is harmful and should be prohibited." *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010). Prior to the Federal Circuit's recent false marking decisions, corporations disregarded 35 U.S.C. § 292 ("Section 292"). They continued to mark their products with patents, in order to give the impression that their products are novel and unique – a useful message to a company in a competitive industry attempting to sway purchasers with the "advanced" nature of their products (such as BP's use of techno-driven language like "unique anti-sludge formula," "liquid engineering," "viscosity" and "thermal breakdown" in its marketing campaign). Thus, corporations spent millions of dollars to obtain patents, marked them on their products pursuant to 35 U.S.C. § 287, paid maintenance fees, sued for

infringement, entered into licensing agreements, and did all types of things consistent with an owner's knowledge and use of the property right (i.e., the patent) granted by the United States.

The Federal Circuit recognized that Section 292 was crafted to incentivize individuals to assist the United States in deterring false marking. "[R]ather than discourage such activities," the statute provides private attorneys general ("any person," *Stauffer*, 619 F.3d at 1327) "sufficient financial motivation" to prosecute and fund litigation against corporations like BP. *See The Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303-04 (Fed. Cir. 2009). Absent proper enforcement of Section 292, corporations would continue to misrepresent the status of their intellectual property rights such that consumers could not trust the patent marking on products. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010); *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005).

The Section 292 enforcement system works. On the one hand, consumers and competitors are protected by false marking lawsuits; the (now) very real threat of prosecution has finally motivated corporations to cease false marking. On the other hand, a corporation that can produce evidence that it took "good faith step[s]" to comply with Section 292 can, on summary judgment or at trial, rebut the presumption that it falsely marked a product with deceptive intent, and can thus avoid a large monetary judgment. *Solo Cup*, 608 F.3d at 1364. BP seeks to upset this balance and, through the imposition of rigid pleading rules, frustrate enforcement and return to the status quo ante, when corporations disregarded Section 292.

In its Motion, BP attempts to convince the Court that the facts alleged by Simonian in his First Amended Complaint (the "Complaint," attached as **Exhibit 1** hereto) are not sufficient to: (a) provide some objective facts from which a court can reasonably infer that BP was aware that United States Design Patent Number D314,509 ("the '509 Patent") expired, and (b) to show that

BP falsely marked the bottle (i.e., the packaging) for its CASTROL® GTX® Motor Oil ("the Accused Product") with the intent to deceive the public. BP attempts to do so by down-playing the significance of the facts pled by Simonian and by asking this Court to impose pleading requirements that exceed those set forth by the Federal Circuit in its most recent decision on the issue. *See In Re BP Lubricant's USA Inc.*, 637 F.3d 1307 (Fed. Cir., March 15, 2011).

As set forth below, BP's Motion should be denied because: (a) Simonian alleges that BP knew that the '509 Patent expired in February 2005 and pleads objective facts to support this allegation of knowledge; and (b) Simonian plausibly alleges that BP continued to mark the label for the Accused Product with the intent to deceive the public as to the correct status and scope of the intellectual property associated with the Accused Product, i.e., by claiming that the Accused Product continued to be covered by more patents than it in fact was. BP's arguments to the contrary, such as its attempt to create a meaningful distinction between "label" and "marking" revisions that is not supported by *In re BP Lubricants* and subsequent district court opinions, should be rejected or tabled until a trial on the merits.

## II.     LEGAL STANDARD

An article marked with an expired patent is "unpatented" within the meaning of 35 U.S.C. §292(a). *See Clontech*, 406 F.3d at 1356 ("[w]hen the statute refers to an 'unpatented article' the statute means that the article in question is not covered by **at least one claim of each patent** with which the article is marked" (emphasis added)). If a product is marked with multiple patent numbers, each and every patent marked on that article must be valid (*e.g.*, not expired) and must have at least one claim that covers the article. *Id.*, and 1356-57.

In order to ultimately prevail on a false marking claim, a plaintiff must prove by a preponderance of the evidence that the defendant falsely marked as patented an unpatented

3

article and that the defendant did not have a reasonable belief that the article was properly marked. *Id*. at 1353. The question of whether conduct rises to the level of statutory deception is a question of fact. *Id*.

The Federal Circuit recently held that claims under 35 U.S.C. §292(a) are subject to the particularized pleading requirements of Fed. R. Civ. Pro. 9(b). *See In re BP Lubricants*, 637 F.3d at 1309. The court further confirmed that "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was fraudulent intent." *Id*. at *9 (*quoting Clontech*, 406 F.3d at 1352). Put another way, "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public." *Solo Cup Co.*, 608 F.3d at 1361.

The Federal Circuit further held that in order to obtain the rebuttable presumption of intent to deceive the public, the false marking complaint must "provide some objective indication to reasonably infer that the defendant was aware that the patent expired." *In re BP Lubricants*, 637 F.3d at 1311-12.

### III. ARGUMENT

**A. <u>BP Knew That It Marked Its Product With An Expired Patent.</u>**

BP does not and cannot deny that it has marked the Accused Product with the expired '509 Patent. Instead, BP claims ignorance (or something akin to "corporate amnesia"), denying that it had any knowledge that the '509 Patent expired in February 2005. However, the facts alleged by Simonian demonstrate otherwise.

Contrary to BP's assertion, Simonian does not merely "repackage" his allegations that BP is a sophisticated company that should have known of the patent's expiration. (*See* Motion, pp. 1, 5). Instead, Simonian has set forth facts that go well beyond the "objective indication to

4

reasonably infer" that BP "was aware that the patent expired" that is required by the Federal Circuit. *See In re BP Lubricants*, 637 F.3d at 1311. Unlike his original complaint, Simonian's amended Complaint does not allege that BP "knew or should have known" that the '509 Patent expired; rather Simonian alleges **that BP knew that the '509 Patent expired in February 2005**.

Contrary to BP's assertions, the Federal Circuit did not hold that patent sophistication is entirely irrelevant to a pleading-sufficiency analysis. Instead, the court held that "conclusory allegations" of sophistication are insufficient, standing alone, to satisfy Rule 9(b). *Id*. at 1309. The allegations in this case are far from conclusory. As Simonian alleged, not only does BP have experience in prosecuting patents (Exh. 1, ¶31) and possesses the knowledge that patents are issued with a limited term (Exh. 1, ¶32) [1], but its employees also have access to a company intranet site that allows easy and convenient access to full copies of patents assigned to the BP Group (of which both Defendant and Castrol Limited are a member), which in the case of U.S. Design Patents lists their 14-year term on the first page (Exh. 1, ¶¶20, 24).

Simonian's allegations go further. Simonian also pleads significant and detailed allegations that further demonstrate that BP had a specific "working knowledge" of the '509 Patent and a "conscious knowledge" of the scope and expiration date of the '509 Patent. *See Hollander v. Ortho-McNeil-Janssen Pharms., Inc.*, 2011 U.S. Dist. LEXIS 36890 at *14 (E.D. Pa, April 4, 2011) [2] (facts showing that defendant had a "working knowledge" of the expiration date of the accused patent is sufficient to support an inference of deceptive intent) *citing*

---

[1] Indeed, these particular allegations are based on BP's admissions in its Answer to Simonian's Original Complaint. (*See* Exh. 1 - Def.'s Answer, Dkt. No. 32, ¶¶19, 20, 23, attached as Exh. E to the Complaint). In its Motion, BP now pretends that these admissions do not exist. (Motion, p. 5).

[2] Copies of this and all unreported decisions cited in this brief are attached as **Group Exhibit A**.

*Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 564 (D. Del. 2010)(defendant's involvement in litigation is <u>one way</u> to "imply a working knowledge of the patents, conscious knowledge of the scope and expiration date" (emphasis added)). In *Hollander,* the court found that defendant had a "working knowledge" of the expiration of the respective accused patents. There, defendant was involved in litigation concerning its accused patent **before** the actual expiration of the patent. *See Hollander*, 2011 U.S. Dist. LEXIS 36890 at *12 (defendant sought an injunction in 2006 and the court stated that the injunction would remain effective until the expiration of the patent on December 29, 2007). Notwithstanding this 2006 knowledge of the December 2007 expiration date, defendant published new packaging marked with the expired patent in January 2008, October 2009, February 2010, April 2010 and October 2010. *Id*. at *12.

Here, Simonian alleges that BP acquired a license to the '509 Patent from Castrol Limited in order to allow BP to legally use the protected bottle design. In particular, Simonian alleges that BP required such a license because Castrol Limited was the owner/assignee of the '509 Patent until the patent's expiration. (Exh. 1, ¶23). Simonian further alleges that such a license agreement would have specifically stated the expiration date of the '509 Patent and it would have further required BP to mark the Accused Product with the '509 Patent (provided the protected bottle design was to be used). *Id.*, *see also*, *Schreiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1017-18 (7th Cir. 2002).

BP simply denies the existence of such license agreement as speculative and argues that, if it did exist, it would not provide BP with a working knowledge of the '509 Patent's expiration date. There are at least three problems with BP's argument. First, BP's arguments are merely conclusory assertions about Simonian's pleadings, and this is insufficient to support a motion to dismiss. *See, Del Monte Fresh Produce, N.A. Inc. v. Kinnavy*, 2010 U.S. Dist. LEXIS 28687,

*14 (N.D. Ill., March 22, 2010) ("[d]espite Del Monte's frequent complaints that [the] counterclaim merely recites labels and conclusions, rather than facts, this argument exposes Del Monte as the party truly concerned with labels and conclusions").

Second, Simonian's allegation that BP's license from Castrol Limited provided BP with the knowledge of the '509 Patent's expiration date is supported both by logic and by recent rulings by Judges Kennelly and Pallmeyer. Judge Kennelly recently held that "a license agreement that reflects that [defendant] knowingly took on an affirmative obligation to comply with patent marking law, via a written agreement that specifically disclosed the expiration dates of the pertinent patents" is "sufficient to comply with the requirement that a false marking complaint provide some objective indication to reasonably infer that the defendant was aware that the patent expired." *Luka v. Procter & Gamble Co.*, 2011 U.S. Dist. LEXIS 32895 at *11 (N.D. Ill. Mar. 28, 2011), *citing In re BP Lubricants*.[3] Similarly, Judge Pallmeyer recently instructed a defendant in a false marking case to either agree to produce a copy of a license agreement between the defendant and a third party so that the plaintiff could amend his complaint based on the information set forth therein, or "to stipulate to <u>logical presumptions</u> regarding the content of that license." *Simonian v. Merial L.L.C., et al.*, Case No. 10-c-1216, N.D. Ill. Dkt. No. 79, Docket Entry April 12, 2011, (emphasis added) attached as **Exhibit 2**.

Third, BP admitted on the record "that it began marking certain CASTROL® Products with the '509 Patent during the term of the '509 Patent to provide notice pursuant to 35 U.S.C. §287(a) that those products were covered by the '509 Patent." (*See* Exh. 1 at Exh. E, ¶25). But for the fact that Defendant was obligated to mark pursuant to a license agreement with Castrol

---

[3] Unlike the complaint in *Hollander v. Braun*, 2011 U.S. Dist. LEXIS 39461 (E.D. Pa., April 12, 2011), Simonian alleges that the license agreement provided BP with specific knowledge of the expiration date and that it contained an affirmative obligation to mark.

Limited, Defendant would have had either no reason – or worse – no legal right to mark its products with the '509 Patent. Therefore, if BP marked the '509 Patent without a license (as it appears to suggest in its Motion), its marking of the '509 Patent on its products would make BP potentially liable not only for falsely marking with an expired patent, but for falsely marking with a patent "without the consent of the patentee." *See* 35. U.S.C. § 292 (a) 1st Alt.

In short, Simonian provided facts that support his allegation that BP was aware that the '509 Patent expired.

**B. Simonian Alleged Facts That Support The Reasonable Inference That BP Falsely Marked With The Intent To Deceive The Public.**

BP argues that Simonian has not sufficiently pled deceptive intent because (a) he has not alleged a plausible motive to deceive the public, and b) BP's multiple label revisions did not change the patent markings. (Motion, pp. 7-9). BP is wrong.

As discussed above, the Federal Circuit has clearly stated that marking is presumptively fraudulent when knowledge of expiration is shown. *Solo Cup Co.*, 608 F.3d at 1361. Further, the Federal Circuit provided examples of allegations from which a court could reasonably infer an intent to deceive:

> […] the naming of specific individuals is <u>not the only way</u> to set forth facts upon which intent to deceive can be reasonably inferred. In an amicus brief, the United States points out that <u>a relator can, for example</u>, allege that the defendant sued a third party for infringement of the patent after the patent expired or made multiple revisions of the marking after expiration. None of these <u>or similar assertions</u> are present in the complaint here.

*In re BP Lubricants*, 637 F.3d at 1312 (emphasis added).

BP abuses these examples in two ways. First, BP attempts to use the examples to supplant the *Solo Cup* presumption. Second, BP uses them to craft a new pleading requirement that "persons with decision-making authority would have to take significant post-expiration

8

actions relating to the patent or its marking." (Motion, p. 5). Of course, the Federal Circuit actually stated none of that, but merely suggested a few limited examples. If the Federal Circuit wanted to provide a conclusive factual blueprint to sufficiently plead intent in a false marking case, it surely could have done so. Instead, the Federal Circuit required a plaintiff to "provide some objective indication to reasonably infer that the defendant was aware that the patent expired" and to provide "specific underlying facts from which [the court] can reasonably infer the requisite intent [to deceive]." *In re BP Lubricants*, 637 F.3d at 1311.

Here, Simonian has set forth extensive allegations that support a reasonable and plausible inference of BP's intent to deceive the public. (*See* e.g., Exh. 1, ¶¶1, 5, 6, 33, 36, 37, 38, 39, 40). In particular, Simonian (Exh. 1, ¶38) plausibly alleges BP's motive to deceive:

> BP Lubricants' advertising of the 'unique' and 'patented' nature of its CASTROL® GTX® Motor Oil product evidences that BP Lubricants used United States patents as a marketing tool. It further evidences that BP Lubricants was focused on and conscious about the extent of the patent protection for its CASTROL® GTX® Motor Oil product and that it knew that the product was falsely marked with the expired '509 Patent.

Likewise, in ¶40 Simonian alleges that:

> BP Lubricants marked the label of its CASTROL® GTX® Motor Oil (bottle) with the expired '509 Patent, in order to deceive the public into believing that […] the label of its CASTROL® GTX® Motor Oil (bottle) continued to be covered by <u>all</u> of the marked patents, i.e., U.S. Patent No. 5,663,126 and the expired '509 Patent. Although the CASTROL® GTX® Motor Oil continued to be covered by a patent other than the expired '509 Patent, the marking with the expired '509 Patent deceived the public by overstating and misrepresenting the true status and scope of the patent protection associated with the CASTROL® GTX® Motor Oil product.

Previewing its arguments to the jury now, BP contends that the fact the Accused Product was (and continues to be) covered by another (utility) patent directed at the motor oil product, and not the product packaging, must prevent this Court from concluding that Simonian has plead facts upon which it may reasonably infer BP's intent to deceive. (Motion, p. 8). This ignores the

9

legal standard, which requires that a product be covered by at least one claim of each patent marked thereon. *See Clontech*, 406 F.3d at 1356.

Furthermore, BP fails to appreciate that from the public's perspective the technical distinction between a design and a utility patent is not at all clear. Rather, a consumer will simply notice the references to "patented anti-sludge technology" and "unique anti-sludge formula." In combination with the two patent numbers marked on the labeling of the Accused Product, it is reasonable to assume that a consumer will understand that <u>both</u> patents (continued) to cover some "unique" aspect or property of the product, therefore deceiving the public as to the true scope of patent protection afforded to the Accused Product. Certainly, in a competitive environment, two patents look better than one, and BP has an obligation to accurately present the public with a clear picture of the status of the intellectual property marked on its product. *See, e.g.*, *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 161-162 (U.S. 1989); *Clontech Labs.*, 406 F.3d at 1356-57; *The Forest Group, Inc.*, 590 F.3d at 1302.

More importantly, Simonian has also alleged that BP revised the labeling for the Accused Products (whereby the patent markings are part of the labeling) <u>at least three (3)</u> times since the '509 Patent expired. (Exh. 1, ¶¶3, 29). BP does not challenge the allegation of multiple label revisions since the expiration of the '509 Patent, but – missing the point entirely – BP instead argues that "[n]o changes were made to the patent *markings* found on the back" of the Accused Product. (*See* Motion, p. 7 (emphasis in original)). The point is that BP had at least three opportunities to correct the false marking on the Accused Product when it made changes to its packaging, but three times did not do so. For all practical purposes, if BP would have removed the '509 Patent on any one of those occasions, it would not have been accused of false marking. And if BP would have removed the other patent or added another patent number without

changing the marking of the expired '509 Patent, an inference of BP's intent to deceive with respect to the correct status of the '509 Patent would be no more or less reasonable.

Further, BP's attempt to find a safe harbor for its admitted multiple packaging label changes is not supported by the Federal Circuit's holding in *In re BP Lubricants* and subsequent district court opinions.[4] As shown in Exh. 1, the marking is part of the label, and any "marking" revision is therefore also a "label" revision. There is simply no requirement (and BP did not cite to any authority for one) as to the "quality" or "type" of a particular revision. Stripped of BP's rhetoric and word-play, the undenied and undeniable fact remains that BP revised the labeling for the Accused Product at <u>least three (3)</u> times subsequent to the expiration of the '509 Patent, and this is all Simonian needs to show to support his allegation that BP falsely marked its product for the purpose of deceiving the public. If BP has evidence to carry its burden of rebutting the presumption of false marking that arises from its conduct, then BP should bring that evidence forward on summary judgment or at trial. *See Solo Cup*, 608 F.3d at 1361.

In this latter regard, and at bottom BP tries to ignore the presumption that it intended to deceive the public when it falsely marked the Accused Product with the knowledge that the '509 Patent marked thereon had expired. *Solo Cup*, 608 F.3d at 1361 ("the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public."). Here, as required by the Federal Circuit, Simonian has alleged, and

---

[4] *See* e.g., *Rogers v. Conair Corp.*, 2011 U.S. Dist. LEXIS 51358 at *6 (E.D. Pa., May 12, 2011)(citing one of the examples set forth by *In re BP Lubricants* as "defendant made multiple revisions in marketing materials after the expiration of the patent"); *Hollander v. Braun*, 2011 U.S. Dist. LEXIS 39461 at *11 (E.D. Pa. April 12, 2011) (finding allegations that defendant updated its product packaging multiple times after the patent expired sufficient to satisfy Rule 9(b)); *Hollander*, 2011 U.S. Dist. LEXIS 36890 at *15-16 (citing *In re BP Lubricants* and holding that "courts have been receptive to plaintiff's alleging multiple packaging revisions, particularly where such allegations are detailed or coupled with other indicia of the defendant's knowledge of a patent's expiration").

11

provided circumstantial evidence (e.g., the license agreement) to support the allegation, that BP had actual knowledge that the '509 Patent had expired, thus triggering the *Solo Cup* presumption. Further, as set forth more fully above, Simonian has alleged multiple label changes subsequent to the '509 Patent's expiration, which the Federal Circuit identified as an example of circumstantial evidence supporting a false marking claim.[5] BP's only answer is to suggest that an even greater showing is required, based on evidence solely within the knowledge of BP: BP demands that Simonian allege <u>who</u> at BP knew about the expiration and <u>who</u> at BP marked the product in spite of it. This specificity is not required at the pleading stage in a fraud case, but may come later – after discovery. *See, e.g., United States ex rel. Kennedy v. Aventis Pharmaceuticals*, 512 F.Supp.2d 1158, 1167 (N.D. Ill. 2007) ("It is well established [that] the requirements of Rule 9(b) are relaxed when the plaintiff lacks access to all facts necessary to detail his claim. Such a situation is more likely to arise when, as in this case, the relators' claims are based on fraud allegedly committed against third parties"); *United States ex rel. Lusby v. Rolls-Royce Corporation*, 570 F.3d 849, 853-54 (7th Cir. 2009) (reciting the relator's allegations and noting that a relator cannot be expected to know – and therefore allege – all the specifics in a given circumstance); *Rogers*, 2011 U.S. Dist. LEXIS 51358 at *7-8, fn 18 ("Defendant argues that Plaintiff failed to connect the dots between the individual receiving notice [of the expiration] and the patent markings on the marketing materials […]. The Court finds no support for the argument that plaintiffs must be able to make such connections in their complaints to survive [a motion to dismiss].").

---

[5] BP finds it "notable" that the Federal Circuit did not include the existence of license agreements that provide patent expiration dates and contain marking obligations "as an example of facts sufficient to state a plausible claim of false marking." (Motion at pp. 6-7). However, the Federal Circuit did not say that its list of examples in *In re BP Lubricants* was meant to be exhaustive, and the absence of a particular example does not indicate its inapplicability.

Therefore, Simonian's Complaint contains sufficient allegations to support a reasonable and plausible inference that BP continued to mark the Accused Product with the expired '509 Patent with the requisite intent to deceive – and thus in compliance with *Twombly* and *Iqbal*. *See*, *Lusby*, 570 F.3d at 854 ("We don't think it is essential for a relator to produce the invoices (and accompanying presentations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential ... and the inference that Lusby proposes is a plausible one." Therefore, Simonian's pleading need <u>not</u> "exclude all possibility of honesty in order to give the particulars of fraud."

## IV. CONCLUSION

Simonian's allegations in his Complaint go far beyond mere conclusory assertions and are therefore sufficient to withstand BP's Motion to Dismiss. Accordingly, Simonian respectfully requests that BP's Motion to Dismiss be denied.

Dated: June 13, 2011                    Respectfully submitted,

                                        s/ Martin Goering

                                        Martin Goering

*Attorneys for Plaintiff*

| | |
|---|---|
| Joseph M. Vanek | Martin Goering |
| John Paul Bjork | Jessica E. Rissman |
| VANEK, VICKERS & MASINI, P.C. | EUGENE M. CUMMINGS, P.C. |
| 111 S. Wacker Drive, Suite 4050 | One North Wacker Drive, Suite 4130 |
| Chicago, Illinois 60606 | Chicago, Illinois 60606 |

Bruce S. Sperling
Robert D. Cheifetz
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 13, 2011, a true and correct copy of **SIMONIAN'S RESPONSE IN OPPOSITION TO BP'S MOTION TO DISMISS THE AMENDED COMPLAINT** was filed electronically with the Clerk of the Court and was served via the Court's CM/ECF System which will automatically provide electronic notice upon all counsel of record.

                                                                 s/ Martin Goering

                                                                  Martin Goering
                                                                  *Attorney for Relator*