UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS A. SIMONIAN, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 1258 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BP LUBRICANTS USA INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Relator Thomas Simonian brought this qui tam action on behalf of the United States, alleging that BP Lubricants USA Inc. engaged in false patent marking in violation of 35 U.S.C. § 292. In August 2010, the court denied BP Lubricants' Rule 12(b)(6) motion to dismiss Simonian's initial complaint. Doc. 31. BP Lubricants sought and obtained a writ of mandamus from the Federal Circuit, which directed this court to dismiss Simonian's complaint with leave to amend. *In re BP Lubricants USA Inc.*, 637 F.3d 1307 (Fed. Cir. 2011). Simonian filed an amended complaint, and BP Lubricants again moved to dismiss. Because the amended complaint does not satisfy the standard set forth by the Federal Circuit for pleading false patent marking claims, the motion is granted and the case is dismissed.

**Background**

The well-pleaded facts alleged in the amended complaint (Doc. 53) are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Also pertinent at the Rule 12(b)(6) stage are exhibits attached to the amended complaint, *see* Fed. R. Civ. P. 10(c); *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004), and documents

attached to BP's dismissal papers that are "referred to" in the complaint and "central to [Simonian's] claim," *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

The facts are set forth as favorably to Simonian as permitted by the amended complaint and the relevant exhibits. United States Patent Number D314,509 ("the '509 Patent") was issued to Castrol Limited on February 12, 1991, with a fourteen-year term ending February 12, 2005. The patent covered the ornamental (non-functional) design of a bottle used for CASTROL-brand lubrication products. After BP Lubricants' parent acquired Castrol Limited in July 2000, BP Lubricants manufactured and sold CASTROL GTX products. Although both BP Lubricants and Castrol Limited were part of the BP Group, because Castrol Limited continued to own the '509 Patent, BP Lubricants and Castrol Limited executed a license agreement allowing BP to use the patent's bottle design. Docs. 58-5, 62, 62-1 through 62-6. The agreement (there actually were two agreements, but for ease of reference they will be considered as one) covered not just the '509 Patent, but dozens of other Castrol Limited designs, patents, trademarks, and products. The agreement did not reference the '509 Patent's term or expiration date.

After executing the agreement, BP Lubricants began to mark the labels of CASTROL GTX products with the '509 Patent, signifying that a valid patent protected something contained in or embodied by the bottle. BP Lubricants continued to do so even after the '509 Patent expired in February 12, 2005. Between that date and February 2010, when Simonian filed this lawsuit, BP Lubricants revised the CASTROL GTX label at least three times. The '509 Patent marking remained on the label after each revision, which gave BP Lubricants a commercial

advantage, dissuading competitors from using similar bottle designs and encouraging consumers to purchase CASTROL GTX for its patented qualities. Although the agreement did not reference the '509 Patent's expiration date, all BP Lubricants employees had electronic access on the BP intranet to full versions of every patent document and patent application assigned to companies within the BP Group.

Simonian alleges that BP Lubricants engaged in false patent marking by placing the expired '509 Patent on CASTROL GTX bottles after February 12, 2005. He seeks a declaration that BP Lubricants engaged in false patent marking in violation of 35 U.S.C. § 292; an award of $500 per false marking, half of which would be paid to the United States; an accounting for any falsely-marked products not yet identified; and costs and attorney fees.

### Discussion

The false marking statute provides in relevant part:

> (a) Whoever … marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public … [s]hall be fined not more than $500 for every such offense.
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292. Claims under § 292 must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See BP Lubricants*, 637 F.3d at 1310-11. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although Rule 9(b) allows a plaintiff to allege knowledge and intent generally or to plead upon information and belief, the complaint nevertheless must "'allege sufficient underlying facts from which a court may reasonably infer

-3-

that a party acted with the requisite state of mind.'" *BP Lubricants*, 637 F.3d at 1311 (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)).

As applied in false marking suits, Rule 9(b) requires the relator to allege that the defendant marked an unpatented item as patented with the intent to deceive the public. *See Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361-62 (Fed. Cir. 2010); *Forest Grp., Inc v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). Settled law holds that "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public." *Pequignot*, 608 F.3d at 1362-63. Accordingly, to properly allege deceptive intent, a complaint must "provide some objective indication to reasonably infer that the defendant was aware that the patent expired" yet continued to mark the patent on its products. *BP Lubricants*, 637 F.3d at 1311. The Federal Circuit identified two non-exclusive examples that would satisfy this requirement: "[A] relator can, for example, allege that the defendant sued a third party for infringement of the patent after the patent expired or made multiple revisions of the marking after expiration." *Id*. at 1312.

Simonian contends that four allegations in the amended complaint provided an "objective indication to reasonably infer" that BP Lubricants was aware that the '509 Patent expired in February 2005. All four fall short.

First, the amended complaint alleges, "[o]n information and belief," that BP Lubricants' license agreement with Castrol Limited "a) specifically stated the term and expiration date of the '509 Patent, and b) contained a provision requiring BP Lubricants to mark every motor oil bottle that embodies the protected bottle design with the '509 Patent." Doc. 53 at ¶ 23. If Simonian's "information and belief" were correct, the agreement's reference to the patent's expiration date might possibly have provided an objective indication that BP Lubricants knew that the patent

had expired. *See Luka v. Procter & Gamble Co.*, __ F. Supp. 2d __, 2011 WL 1118689, at *4 (N.D. Ill. Mar. 28, 2011) (a license agreement that "reflects that [defendant] knowingly took on an affirmative obligation to comply with patent marking law, via a written agreement that specifically disclosed the expiration dates of the pertinent patents" is "sufficient to comply with the requirement that a false marking complaint 'provide some objective indication to reasonably infer that the defendant was aware that the patent expired'") (quoting *BP Lubricants*, 637 F.3d at 1311). It turns out that Simonian was wrong; a copy of the license agreement submitted by BP Lubricants—which may be considered on a Rule 12(b)(6) motion because it is referenced in the amended complaint and is central to Simonian's claims—shows that it does not list, reference, or allude to the '509 Patent's term or expiration date. Moreover, the agreement's term is not tied to the expiration of any patent, and royalties are not calculated by reference to any particular patent listed in the license agreement. Doc. 62-1 at 8-12, 62, 68. It follows that the agreement does not provide an objective indication of BP Lubricants' knowledge of the '509 Patent's expiration date. *See Hollander v. B. Braun Med., Inc.*, 2011 WL 1376263, at *4 n.4 (E.D. Pa. Apr. 12, 2011) ("The Court's analysis is unaffected by allegations that the defendant was a licensee of its patents, and therefore 'kept close track of the terms of the Patents.' These allegations are conclusory and offer no details with respect to when any licensing payments were made, or whether such payments were made in close proximity to the expiration of the patents, such that the defendant was arguably on notice.").

Second, the amended complaint alleges that BP Lubricants has experience applying for, obtaining, and litigating patents, and that "[c]ertain of BP Lubricants' employees or agents understand that a patent is issued with a limited term." Doc. 53 at ¶¶ 31-32. Those allegations do no more than suggest that BP is a sophisticated company and therefore knew or should have

known that the '509 Patent expired. They are precisely the type of allegations the Federal Circuit deemed insufficient to state a false marking claim. *See BP Lubricants*, 637 F.3d at 1312 (allegation that BP is a "sophisticated company and has experience applying for, obtaining, and litigating patents" is insufficient under Rule 9(b)); *see also Hollander v. Hospira, Inc.*, 2011 WL 1811637, at *4 (N.D. Ill. May 12, 2011) (same). Had Simonian alleged that BP Lubricants previously litigated *this* patent, the requisite knowledge might have been inferred, but Simonian made no such allegation. *See BP Lubricants*, 637 F.3d at 1312 (relator can plead inference of knowledge with allegation that defendant "sued a third party for infringement of the patent"); *Hollander v. Ortho-McNeil-Janssen Pharms., Inc.*, __ F. Supp. 2d __, 2011 WL 1288676, at *5 (E.D. Pa. Apr. 5, 2011) ("intent to deceive may be inferred from a defendant's active involvement in litigation over a disputed patent"); *Pub. Patent Found., Inc. v. GlaxoSmithKline Consumer, Healthcare, L.P.*, 2011 WL 1142917, at *2 (S.D.N.Y. Mar. 22, 2011) ("Such litigation is an objective indication which at the pleading stage allows the Court to reasonably infer that the defendant was aware that the patent expired.") (internal quotation marks and citations omitted).

Third, the amended complaint alleges that BP Lubricants had knowledge of the '509 Patent's expiration because "the term of the '509 Patent (i.e., '14 Years') is printed on the face of the patent" and "[a]t least since 2004, all BP Group employees had electronic access to full versions of every patent … assigned to a member of the BP Group via the BP Intranet." Doc. 53 at ¶ 24. If a corporation's provision to its employees of electronic access to the corporation's patents were sufficient under *BP Lubricants* to plead an "objective indication to reasonably infer that the defendant was aware that the patent expired," 637 F.3d at 1311, the decision would be rendered a dead letter. The reason is plain: even if a corporation does not provide employees

with electronic access to its patents via an intranet, such access is available on the United States Patent and Trademark Office's ("PTO") website, http://www.uspto.gov, which allows the browser to view patents assigned to any person or entity. *See* http://tinyurl.com/3t5zywj (last visited Sept. 8, 2011) (showing all patents registered to Castrol Limited, including the '509 Patent). The website affords every corporation's employees unfettered electronic access to the full version of the corporation's patents. Thus, if a corporation's knowledge that a particular patent expired could be inferred from the fact that its employees have electronic access to all its patents, the inference would apply to every corporation.

That cannot possibly be what the Federal Circuit meant to accomplish in *BP Lubricants*. The question then becomes whether the requisite inference of knowledge can arise from the fact that a corporation provides its employees a *second* means, via an intranet, of accessing its patents. The answer is no: the fact that a corporation loads its patents on an intranet reflects nothing more than its sophistication regarding and general awareness of its patents, a fact that does not give rise to an inference that it knew that one of its patents has expired. *See BP Lubricants*, 637 F.3d at 1312 (the "bare assertion" that "BP is a 'sophisticated company and has experience applying for, obtaining, and litigating patents'" gives "no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known the patent expired"); *Hospira*, 2011 WL 1811637, at *4 (an allegation that the defendant has a "practice" and "routine" of reviewing patent portfolios is insufficient under Rule 9(b)).

Fourth, the amended complaint alleges that BP Lubricants revised the CASTROL GTX label at least three times after the '509 Patent's expiration on February 12, 2005, but did not remove the patent marking any of those times. Doc. 53 at ¶¶ 29-30. The amended complaint reproduces pictures of the successive labels, which show that revisions were made to the front of

the bottle, not the back, where the patent markings were located. *Id*. at ¶¶ 27-29. Citing the Federal Circuit's holding that a relator can plead an inference of knowledge by alleging that the defendant "made multiple revisions of the marking after expiration," *BP Lubricants*, 637 F.3d at 1312, Simonian contends that BP Lubricants' three post-expiration revisions to the CASTROL GTX label gives rise to an inference that it had knowledge of the '509 Patent's expiration.

Simonian's argument ignores the distinction between a label, on the one hand, and a patent marking that appears on a label, on the other. As this case illustrates, a label can be revised while the patent marking remains unchanged—BP Lubricants revised the front of the CASTROL GTX bottle, yet there is no allegation that it revised any part of the back of the bottle, let alone the patent marking. Nor is there any allegation or suggestion, in either the amended complaint or Simonian's opposition brief, that BP Lubricants checked or had any reason to check the '509 Patent's expiration date when planning or implementing its revisions to the bottle's front. It follows that the fact of those revisions do not create a reasonable inference that BP Lubricants became aware that the patent had expired. *See Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, 2011 WL 2837421, at *2 (D.N.J. July 14, 2011) (an allegation that "Defendants revised a package insert after the expiration of the patent" is not "a fact from which the Court can reasonably infer that Defendants knew the patent was expired"); *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 563 (D. Del. 2010) ("To the extent that plaintiff is arguing that BIC had knowledge that the patents were expired because the packaging of these products was updated following patent expiration, this argument fails to prove BIC had intent to deceive the public."), *reconsideration denied*, 2011 WL 2446427 (D. Del. June 16, 2011).

In a footnote, Simonian cites *Ortho-McNeil-Janssen Pharmaceuticals* and *B. Braun Medical*, both from the Eastern District of Pennsylvania, for the proposition that multiple

revisions to product packaging can create the requisite inference of knowledge. Doc. 56 at 11 n.4. There are statements in both cases supporting that proposition. *See B. Braun Med.*, 2011 WL 1376263, at *4 (expressing uncertainty as to the distinction between a label and a patent marking); *Ortho-McNeil-Janssen Pharms.*, 2011 WL 1288676, at *5 (inference of knowledge can be pleaded by allegations of "multiple packaging revisions, particularly where such allegations are detailed *or* coupled with other indicia of the defendant's knowledge of a patent's expiration") (emphasis added). The statement in *Ortho-McNeil-Janssen Pharmaceuticals*, however, is a dictum. As a subsequent decision from the Eastern District of Pennsylvania observed, the complaint in *Ortho-McNeil-Janssen Pharmaceuticals* alleged not only that the defendant made multiple packaging revisions, but also that it "brought infringement actions based on three expired patents and reviewed applications by generic drug manufacturers to the Center for Drug Evaluation and Research which referenced the expiration of the defendant's patents"; the subsequent decision further observed that both allegations were central to the *Ortho-McNeil-Janssen Pharmaceuticals* court's decision to permit the case to proceed. *Hollander v. Timex Grp. USA, Inc.*, 2011 WL 1399806, at *10 (E.D. Pa. Apr. 13, 2011). The statement in *B. Braun Medical*, while not a dictum, was made in a materially different context. The *B. Braun Medical* court emphasized that the defendant there had revised its packaging without removing the false patent marking *after* being sued for including that marking on that packaging: "The filing of this suit arguably put the defendant on notice that its patents had expired. Accepting as true the allegation that the defendant revised its packaging after this suit was filed, and yet failed to remove the expired patent markings, the Court could infer that the defendant intended to deceive the public." 2011 WL 1376263, at *4 (footnote omitted). Because BP Lubricants is not alleged to have revised the CASTROL GTX label while retaining

the '509 Patent marking after being sued in this case, the inference drawn in *B. Braun Medical* cannot be drawn here.

### Conclusion

For the foregoing reasons, the amended complaint fails to satisfy the standard articulated by the Federal Circuit for pleading a false patent marking claim. The only remaining question is whether the amended complaint should be dismissed with prejudice or, rather, with leave to replead. Because Simonian was fully aware of *BP Lubricants* when filing his amended complaint—the Federal Circuit, after all, issued that decision in this case—it is safe to assume that Simonian put forth his best effort at pleading a claim and therefore that there would be no point in giving him another try. *See Promote Innovation LLC v. Roche Diagnostics Corp.*, __ F. Supp. 2d __, 2011 WL 2181243, at *7 (S.D. Ind. June 3, 2011). Simonian's opposition brief, moreover, does not request leave to replead in the event the court finds the amended complaint deficient. *See James Cape & Sons, Inc. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting argument that court erred in dismissing complaint with prejudice, rather than without prejudice and with leave to amend, where plaintiff did not request such leave). Accordingly, this case is dismissed with prejudice.

September 9, 2011                            _____
                                                           United States District Judge